# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| ALSIS JONES, | |
| *Plaintiff*, | |
| v. | Civil Action No. 15-1240 (RDM) |
| PRAMOTE CHANGSILA, *et al.*, | |
| *Defendants.* | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Alsis Jones, a former employee at two Sala Thai restaurants, brings this action against both restaurants as well as the restaurants' owner and accountant.  Jones asserts two sets of claims relating to the restaurants' payroll and tax reporting practices:  First, he contends that the restaurants, their owner, and the accountant violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, by failing to pay him overtime wages to which he was entitled.  Second, he alleges that they committed an assortment of common law torts by falsely reporting to the Internal Revenue Service ("IRS") and state tax authorities that he was paid several thousands of dollars in tips, which, in fact, he never received.  He alleges that these false reports caused him to incur substantial, unfounded tax liabilities.

Defendants move to dismiss all of these claims, as well as a claim that Jones does not bring but that he alludes to in the background section of his amended complaint.[1]  Dkt. 16.  Most notably, Defendants contend that Jones fails to state a claim under the FLSA, that his common law claims are preempted by the FLSA, and that, in any event, his claims are time barred.  For

---

[1]  For ease of reference, unless otherwise noted, the Court will refer to the amended complaint, Dkt. 14, simply as "the complaint."

the reasons explained below, the Court will **GRANT** in part and **DENY** in part Defendants'

motion to dismiss.

## I.  BACKGROUND

The complaint, Dkt. 14, sets forth the relevant facts, which the Court must accept as true

for purposes of the pending motion.  *See Wood v. Moss*, --- U.S. ---, 134 S. Ct. 2056, 2065–67 &

n.5 (2014).

## A.      The Parties

Originally from Thailand, Jones immigrated to the United States and was employed at

two Sala Thai restaurants in the D.C. metropolitan area from 2006 to 2008.  Dkt. 14 at 4–6 (Am.

Compl. ¶¶ 5, 16).  One restaurant was located in the District of Columbia and was incorporated

under D.C. law as "Green T Group, Inc."  *See* Dkt. 14-1 at 2; Dkt. 14 at 4–5 (Am. Compl. ¶ 8 &

n.3).  At some point after Jones ceased working for Sala Thai, Green T Group was sold to

"Green T Group II, Inc.," which continues to do business in the District of Columbia.  *See* Dkt.

14 at 4–5 (Am. Compl. ¶ 8 & n.3).  According to Jones, Green T Group II is the "successor in

interest" to the original Green T Group.  *Id.* at 4 (Am. Compl. ¶ 6).  The second Sala Thai

restaurant is located in Bethesda, Maryland and is incorporated under Maryland law as "Ja-Roen-

D Inc."  *See id.* at 5 (Am. Compl. ¶ 9); Dkt. 14-1 at 2.

During Jones's employment, Green T Group and Ja-Roen-D (collectively, "Sala Thai")

"shar[ed] the same employees [and] management."  Dkt. 14 at 4 (Am. Compl. ¶ 7).  Both

companies were owned (in whole or in part) by Pramote Changsila, who "operated the [Sala Thai

restaurants] under his sole control" and was responsible for "all employment decisions."  *Id.*

(Am. Compl. ¶¶ 6–7).  The companies also shared "accounting[,] . . . tax preparation[,] and

payroll services," which were provided by Hans Ravesteijn.  *Id.* at 4–5 (Am. Compl. ¶¶ 7, 10).

The complaint names Changsila, Ravesteijn, and the two Sala Thai restaurants—Green T Group II and Ja-Roen-D—as defendants.

**B.       Overtime Allegations**

Changsila initially hired Jones to work at the D.C. restaurant as a "manager."  *Id.* at 5–6 (Am. Compl. ¶ 16).  But, although given this title, Jones did not have the power to hire or fire employees, and "Changsila required [him] to perform standard labor . . . duties as a cook, busboy, bartender, waiter or even cashier on a daily basis."  *Id.* at 8–9 (Am. Compl. ¶¶ 26, 30).  Jones also was told that he would "be compensated every two weeks . . . with a salary in the approximate amount of $1,500.00 based on a 40-hour workweek," yielding an hourly rate of $18.75 per hour and an annual salary of "approximately $30,000."[2]  *Id.* at 6 (Am. Compl. ¶¶ 16, 18).  Soon after Jones started, however, Changsila increased his hours to "70–80 hours" per week and required him also to work at the Bethesda, Maryland restaurant.  *Id.* (Am. Compl. ¶ 18).  Jones alleges that despite working more than 70 hours each week, he "never received more than . . . $1,500 every two weeks [in] compensation."  *Id.* (Am. Compl. ¶ 17).  Rather, according to Jones, Changsila and Ravesteijn told him "throughout his . . . employment" that he was not entitled to overtime wages because he was a "manager."  *Id.* at 8 (Am. Compl. ¶ 27).  Finally, Jones claims that Changsila and Sala Thai "did not keep records of work hours for any employee," *id.* at 10 (Am. Compl. ¶ 33), nor did Changsila or Ravesteijn document Jones's compensation, *id.* at 8–9 (Am. Compl. ¶ 28).

---

[2]  Jones does not explain the basis for his conclusion that a salary of $1,500 every two weeks yields an annual salary of "approximately $30,000."  Assuming that Jones worked every week over the course of the year, it appears that his annual salary would have been $39,000.  This discrepancy, however, has no bearing on the questions currently before the Court.

**C.      Tax Reporting Allegations**

Jones further alleges that Changsila "individually and through his agents [Ravesteijn and Sala Thai] willfully and systematically engaged in 'wage theft' or 'payroll fraud.'"  *Id.* at 7 (Am. Compl. ¶ 23).  In particular, Ravesteijn "falsely and knowingly" prepared tax documents, including W-2 forms, that "misrepresented [Jones's] pay" by reporting tip income, *id.* (Am. Compl. ¶ 22), and Defendants then submitted these false documents to the IRS and tax authorities in the District of Columbia and Maryland, *id.* at 8 (Am. Compl. ¶ 24).  Jones maintains that he "never received any tip[s]," and that, in fact, Changsila or Ravesteijn told him that he was not entitled to receive tips because he was a manager.  *Id.* at 10–11 (Am. Compl. ¶ 37).

By way of example, the complaint sets forth detailed allegations with respect to tax year 2007.  According to Jones, Defendants reported his income for 2007 in multiple W-2s, which, taken together, falsely indicated that he earned nearly $30,000 in tips.  *Id.* at 11 (Am. Compl. ¶¶ 39, 40).  These allegedly fraudulent W-2s had the effect of doubling his reported income from the $30,000 or so that he actually received to the $60,000 or so that Defendants reported, leaving Jones with a tax liability of approximately $14,000.  *Id.* at 10–12 (Am. Compl. ¶¶ 36, 40).  In support of this allegation, Jones points to a "Wage and Income Transcript" for the 2007 tax period from the IRS, which is attached to his complaint.  *See id.* at 11 (Am. Compl. ¶ 40); Dkt. 14-1.  That "transcript" indicates (1) that Jones was issued a W-2 from "Green T Group" and a second W-2 from "Ja-Roen-D;" (2) that he received $32,907 for his work at Green T Group ($19,607 in wages and $13,300 in tips); and (3) that he received $28,610 for his work at Ja-Roen-D ($18,610 in wages and $10,000 in tips). Dkt. 14-1 at 2.  In the aggregate, then, the two

restaurants reported that Jones received $61,517 in compensation ($38,217 in wages and $23,300 in tips).

Jones was unaware of Defendants' "fraudulent accounting practices," Dkt. 14 at 10 (Am. Compl. ¶ 35), and, indeed, he was affirmatively misled by Changsila, who told him between 2009 and 2013 that "the additional income [in the form of tips] . . . was an IRS or accounting mistake" and that Changsila and Ravesteijn "were working with the taxing authorities . . . to correct the situation[,] [which] had been complicated by the sale of one . . . of the Sala Thai restaurants," *id.* at 12 (Am. Compl. ¶ 47). For several years, Jones apparently believed Changsila and expected that Defendants would fix the purported mistake. *Id.* at 12 (Am. Compl. ¶ 48). Meanwhile, because an outstanding tax liability would have impaired his ability to bring his minor daughter from Thailand to the United States, Jones "had no choice but to enter into a payment plan . . . to pay the[] taxes until the issue was cleared up by the defendants." *Id.* at 12–13 (Am. Compl. ¶ 49). He completed the five-year plan in 2015.[3] *Id.* at 11–12 (Am. Compl. ¶¶ 40, 48). At some point in early 2014, Jones asked Changsila to remedy the reporting error with the IRS. *Id.* at 13 (Am. Compl. ¶ 51). Changsila "felt insulted and became angry and threatened [him]." *Id.* (Am. Compl. ¶ 51). When Jones requested Sala Thai's records on tips from Changsila, he "was told that no accounting records exist[ed]" due to the sale of one of the restaurants. *Id.* (Am. Compl. ¶ 52).

Jones retained counsel in February 2014, *id.* at 13–14 (Am. Compl. ¶ 54), and his attorney sent a letter to Changsila complaining about the reporting error, *see* Dkt. 14-2 at 2–3 (letter from Athan Tsimpedes to Ja-Roen-D). In response, Changsila allegedly "sent a relative to

---

[3] It is unclear from the complaint whether the tax liability and payment plan concerned the IRS or the Maryland tax authority. *See* Dkt. 14 at 9 (Am. Compl. ¶ 32 (referring to "payment plan with the IRS *or* State of Maryland") (emphasis added).

[Jones's] [place of] employment," which Jones interpreted as a "veiled threat" intended to "intimidat[e]" him and to discourage him "from taking legal action."  Dkt. 14 at 13–14 (Am. Compl. ¶ 54).  In addition, counsel for Sala Thai wrote to Jones's lawyer, asserting that Sala Thai was "at a loss to understand the allegations your letter raises;" that the "separate[] incorporat[ion]" of the two Sala Thai restaurants "probably account[ed] for [Jones's] confusion;" that the description of the facts contained in the letter from Jones's counsel was "inaccurate;" and that Sala Thai had "no knowledge of any incorrect payroll check being issued to your client."  Dkt. 14-3 at 2–3.  That letter closed by requesting that Jones's counsel provide copies of "his tax returns and any IRS audit or assessment notice so the years in question can be researched to see what paychecks are at issue, and how the withholding tax computations were prepared incorrectly, as you contend."  *Id.* at 3.  Jones's lawyer responded by providing additional details about Jones's allegations and threatening to bring suit in the absence of a resolution of the dispute.  Dkt. 14-4 at 2–3.

### D.  Procedural History

Jones filed this action in July 2015.  *See* Dkt. 1.  After Defendants moved to dismiss for failure to state a claim, Dkt. 8, Jones filed an amended complaint, Dkt. 14.  The now-operative complaint asserts seven claims.  Jones first alleges that Defendants intentionally violated the FLSA, 29 U.S.C. § 207, by "fail[ing] and refus[ing] to compensate" him for overtime work (Count I).  Dkt. 14 at 19–20 (Am. Compl. ¶¶ 82–84).  By his calculations, Defendants owe him approximately $67,500 (or, if treble damages are available, $202,500).  *Id.* at 6 (Am. Compl. ¶ 19).  Jones also seeks to pursue his FLSA claim as a "collective action on behalf of himself and all other similarly situated individuals" who worked for Sala Thai from 2007 to the present, a class that he estimates would comprise at least forty individuals.  *Id.* at 18–19 (Am. Compl. ¶¶

71–76).  On behalf of the putative class, Jones seeks damages for "all unpaid overtime wages" as well as "an equal amount in liquidated damages."  *Id.* at 20 (Am. Compl. Count I Prayer).

The complaint also asserts six common law claims based on the alleged fraudulent tax reporting scheme.  He brings the first four of those claims against Changsila and Ravesteijn, including claims for (1) intentional misrepresentation (Count II); (2) constructive fraud (Count III); (3) fraudulent concealment (Count IV); and (4) aiding and abetting (Count V).  *Id.* at 20–22 (Am. Compl. ¶¶ 85–108).  And he asserts his final two claims against all four defendants, including claims for (5) an accounting (Count VI), and (6) unjust enrichment (Count VII).  *Id.* at 22–23 (Am. Compl. ¶¶ 109–117).

Defendants have moved to dismiss for failure to state a claim.  Dkt. 16.  They first contend that the complaint fails adequately to allege that Jones was eligible for overtime compensation under the FLSA or that Green T Group II and Ravesteijn were his "employers."  Dkt. 16-1 at 6–11.  Second, Defendants take issue with references to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962, 1964, found in the background section of the complaint; recognizing that Jones does not invoke RICO in any of the substantive counts of his complaint, Defendants nonetheless, out of an abundance of caution, move to dismiss any RICO claim that he might be deemed to have brought.  Dkt. 16-1 at 11–20.  Third, Defendants argue that the FLSA preempts Jones's common law claims.  *Id.* at 5–6.  Finally, they maintain that all of Jones's claims are time barred.  *Id.* at 20–23.

## II.  LEGAL STANDARD

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is

plausible if the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although "detailed factual allegations" are not required, the complaint must contain "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. The Court must "assume [the] veracity" of "well-pleaded factual allegations," *Iqbal*, 556 U.S. at 679, and must "grant [the] plaintiff the benefit of all inferences that can be derived from the facts alleged," *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal quotation marks omitted). The Court, however, need not accept "a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

In addition to challenging the adequacy of Jones's claims, Defendants raise two affirmative defenses—that Jones was an exempt employee, and thus was not entitled to overtime pay, and that all of his claims are time barred. *See* Fed. R. Civ. P. 8(c). "[A]n affirmative defense may be raised by pre-answer motion under Rule 12(b) when the facts that give rise to the defense are clear from the face of the complaint." *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998). Dismissal is improper, however, "as long as a plaintiff's potential rejoinder to the affirmative defense [is not] foreclosed by the allegations in the complaint." *de Csepel v. Republic of Hungary*, 714 F.3d 591, 608 (D.C. Cir. 2013) (alteration in original) (internal quotation marks omitted).

## III.  ANALYSIS

### A.  FLSA Claim

#### 1.  *Eligibility for Overtime Compensation*

The FLSA requires employers to compensate their employees for hours worked in excess of 40 hours per week at a rate not less than 1.5 times their regular rate. *See* 29 U.S.C. § 207(a).

The overtime requirement, however, "does not apply . . . to all employees." *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 147 (2012). As relevant here, Congress exempted individuals "employed in a bona fide executive . . . capacity." 29 U.S.C. § 213(a)(1). The "executive" employee exemption is further defined in the governing Department of Labor regulations. In particular, an employee is "employed in a bona fide executive capacity" if (1) she is "[c]ompensated on a salary basis" of at least $455 per week; (2) her "primary duty is management of the enterprise . . . or of a customarily recognized department;" (3) she "customarily and regularly directs the work of two or more other employees;" and (4) she "has authority to hire and fire other employees or [her] suggestions and recommendations as to the . . . change of status of other employees are given particular weight." 29 C.F.R. § 541.100(a).

In determining whether an employee's "primary duty" involves the performance of exempt work, the Court must consider "all [of] the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." 29 C.F.R. § 541.700(a). "Factors to consider . . . include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the [same] kind of nonexempt work performed by the employee." *Id.* Significantly, an employee's "job title alone is insufficient to establish the exempt status of an employee." 29 C.F.R. § 541.2. Rather, the "status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements" of the applicable regulation. *Id.*

Defendants argue that Jones was an exempt employee and, therefore, was never entitled to overtime pay under the FLSA. Dkt. 16-1 at 6–9. They face two substantial hurdles, however,

in pressing this contention on a motion to dismiss.  First, the "executive" employee exemption, like other FLSA exemptions, constitutes an "affirmative defense on which the employer has the burden of proof."  *Corning Glass Works v. Brennan*, 417 U.S. 188, 196 (1974); *see also Cannon v. District of Columbia*, 717 F.3d 200, 204 (D.C. Cir. 2013); *Smith v. Gov't Emps. Ins. Co.*, 590 F.3d 886, 891 (D.C. Cir. 2010).  Second, Jones's factual allegations must be taken as true for purposes of Defendants' motion to dismiss.  *Iqbal*, 556 U.S. at 678.  Defendants make three attempts to clear these hurdles, none of which succeeds.

Defendants first contend that Jones's original complaint conceded that he was employed in an "executive" capacity, and they argue that he was not entitled to amend his complaint in a manner that "blatantly change[d]" and "contradict[ed] the facts set forth in his original complaint" simply to plead around a defense raised in Defendants' initial motion to dismiss. Dkt. 16-1 at 6 (quoting *Hourani v. Mirtchev*, 943 F. Supp. 2d 159, 171 (D.D.C. 2013)).  The Court is unconvinced.  Defendants point to allegations in Jones's original complaint that refer to Jones as a "manager."  *Id.* at 7; *see* Dkt. 1 at 5, 10 (Compl. ¶¶ 15, 42).  Although similar allegations appear in Jones's amended complaint, he is more careful there, often—but not always—using quotation marks to signify that the word "manager" was Defendants' and not his. *See* Dkt. 14 at 5–6, 9 (Am. Compl. ¶¶ 16, 30).  But, as noted above, regardless of who assigned the term to Jones's status, titles alone are not sufficient to trigger application of the exemption.

Defendants also suggest that the Court should not credit Jones's allegations—first raised in his amended complaint—that he merely performed "standard labor and employee duties including duties as a cook, busboy, bartender, waiter or even cashier."  Dkt. 16-1 at 7 (quoting Dkt. 14 at 9 (Am. Compl. ¶ 30)).  In pressing that argument, however, Defendants ignore the fact that an employee's exempt status is an affirmative defense.  *Corning Glass Works*, 417 U.S. at

196.  As a result, Jones was not required to include allegations relating to his specific duties in his original—or in his amended—complaint.  Accordingly, he can hardly be criticized for raising those allegations for the first time in his amended complaint.

Finally, putting aside any question relating to the changes contained in Jones's amended complaint, Defendants contend that the amended complaint is, on its face, self-defeating.  They note that Jones alleges that he was hired to work as a "manager;" that he was compensated based on a fixed, bi-weekly salary of $1,500; and that he performed managerial duties.  Dkt. 16-1 at 7– 9.  As already explained, however, Jones's job title is not dispositive—indeed, if it were, employers could easily avoid the obligation to pay overtime wages under the FLSA by simply bestowing inflated titles on their employees.  Similarly, the fact that Jones was paid in excess of $455 a week is a necessary condition for application of the executive employee exemption, but it is not sufficient.[4]  And, even if Jones did perform *some* managerial functions, the executive employee exemption applies only where the employee's "primary duty" involves the performance of exempt work.  29 C.F.R. § 541.100(a)(2).  The amended complaint contains no such concession.  To the contrary, it alleges that "the duties [Jones] performed . . . were common labor[-]related duties," Dkt. 14 at 8 (Am. Compl. ¶ 26); that he worked "as a cook, busboy, bartender, waiter or even cashier *on a daily basis*," *id.* at 9 (Am. Compl. ¶ 30) (emphasis added); and that Jones did not have the authority to hire or fire employees, *id.* at 8 (Am. Compl. ¶ 26).

---

[4]  Although Jones asserts that he received a salary of $1,500 every two weeks, *see* Dkt. 14 at 5–6 (Am. Compl. ¶¶ 16–17), that assertion appears to conflict with the pay stubs attached to Jones's opposition, which indicate that he was paid on an hourly basis, *see* Dkt. 20-3 (pay stubs for the D.C. and Maryland Sala Thai restaurants reporting that Jones worked 80 hours at each restaurant at a rate of $2.77 per hour over a two-week period in October 2007).  The pay stubs, however, were not attached to Jones's complaint and therefore are not properly before the Court on a motion to dismiss.  *See* Fed. R. Civ. P. 12(d).

Because the complaint does not itself establish that Jones was an exempt employee, "dismissal at this stage [is] inappropriate." *de Csepel*, 714 F.3d at 608.

2. *Employer Status of Ravesteijn and Green T Group II*

Defendants also argue that Jones has failed to allege that Ravesteijn and Green T Group II were his "employers." Although the complaint does not adequately allege that Ravesteijn was Jones's employer, the allegations with respect to Green T Group II are sufficient to state a claim.

a. <u>Ravesteijn</u>

The FLSA defines the term "employee" to mean "any individual employed by an employer." 29 U.S.C. § 203(e)(1). An "employer," in turn, is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). These definitions are "necessarily . . . broad . . . in accordance with the remedial purpose of the Act." *Morrison v. Int'l Programs Consortium, Inc.*, 253 F.3d 5, 10 (D.C. Cir. 2001) (quoting *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058 (2d Cir. 1988)).

To determine "employee" status, the Court must examine the "economic reality" between the parties, *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961), and in particular "the extent to which typical employer prerogatives govern the relationship between the putative employer and employee," *Henthorn v. Dep't of Navy*, 29 F.3d 682, 684 (D.C. Cir. 1994). Thus, among other things, the Court must consider "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Morrison*, 253 F.3d at 11 (quoting *Henthorn*, 29 F.3d at 684). No factor is dispositive; rather, the Court must consider "the totality of the circumstances." *Id.*

A company's officers and owners may at times be treated as "employers" within the meaning of the FLSA.  *See* 29 U.S.C. § 203(d); *Murcia v. A Capital Elec. Contractors, Inc.*, No. 16-2065, 2017 WL 3891665, at *4 (D.D.C. Sept. 5, 2017).  "The overwhelming weight of authority," moreover, supports the view "that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages."  *Ventura v. L.A. Howard Constr. Co.*, 134 F. Supp. 3d 99, 102 n.1 (D.D.C. 2015) (quoting *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983)).  In evaluating whether an individual should be considered an "employer" for purposes of the FLSA, courts consider the four factors discussed above as well as "the ownership interest of the corporate officer."  *Ventura v. Bebo Foods, Inc.*, 738 F. Supp. 2d 1, 5 (D.D.C. 2010).

Defendants are correct that the complaint fails to allege that Ravesteijn could hire or fire Sala Thai employees or that he supervised or controlled work schedules or conditions.  The complaint also does not allege that Ravesteijn had any ownership interest in Sala Thai.  At most, it avers that Ravesteijn "performed all accounting services, including but not limited to payroll, work schedules, hours worked, payment[] checks, [and] [federal] and [s]tate taxation forms," Dkt. 14 at 7 (Am. Compl. ¶ 20); that he told Jones that he was not entitled to tips, *id.* at 9 (Am. Compl. ¶ 30); and that he was "aware" of Jones's hours and wages, *id.* at 8–9 (Am. Compl. ¶¶ 25, 28).  These allegations, even if accepted as true, do not plausibly establish that Ravesteijn was Jones's "employer" for purposes of the FLSA.

The Court will, accordingly, dismiss Jones's FLSA claim against Ravesteijn.

      b.  <u>Green T Group II</u>

For different reasons, Defendants urge the Court to dismiss Jones's FLSA claim against Green T Group II.  According to Defendants, the complaint fails to "identify the corporate entity

that operated the D.C. location" of Sala Thai, where Jones worked, Dkt. 16-1 at 2, and "fails to allege any sort of employment relationship with either Green T Group or Green T Group II," *id.* at 11.  For several reasons, the Court is unpersuaded.

First, Defendants disregard the IRS wage and income transcript attached to Jones's complaint, which identifies "Green T Group Inc" as Jones's "[e]mployer" in 2007.  Dkt. 14-1 at 2.  It is "the ordinary practice when considering whether a complaint adequately states a claim . . . to 'consider attachments to the complaint as well as the allegations contained in the complaint itself,'" *Crawford v. Duke*, 867 F.3d 103, 108 (D.C. Cir. 2017) (citation omitted), and Defendants offer no reason why that practice should not apply here.  Second, even if the Court focuses exclusively on the body of the complaint itself, Defendants' argument fails.  The complaint alleges, for example, (1) that Jones "work[ed] at [the] Sala Thai [r]estaurant in the District of Columbia from about November 2006 through March 2008," Dkt. 14 at 5–6 (Am. Compl. ¶ 16); (2) that the D.C. Sala Thai restaurant was incorporated as "Green T Group," *id.* at 4–5 (Am. Compl. ¶ 8 & n.3); (3) that the original Green T Group was later purchased by Green T Group II, *id.* (Am. Compl. ¶ 8 & n.3); (4) that Changsila orchestrated the sale to avoid liability, *id.* (Am. Compl. ¶ 8 & n.3); and (5) that Changsila has retained ownership and control over Green T Group II, *id.* (Am. Compl. ¶ 8 & n.3).  Those allegations are more than sufficient to state a claim against Green T Group II as the "successor in interest" to Green T Group.  *See id.* at 4, 19–20  (Am. Compl. ¶¶ 8 n.3, 78–83).

The Court will, therefore, deny Defendants' motion to dismiss Jones's FLSA claim against Green T Group II.

**B.      Civil RICO Allegations**

Jones's complaint includes a number of references to RICO, including in the first sentence of the first paragraph.  *See* Dkt. 14 at 1 (Am. Compl. ¶ 1).  It does not, however, include RICO among the seven counts that make up the asserted "causes of action."  *Id.* at 19 ("CAUSES OF ACTION").  Understandably confused by this, Defendants make two arguments.  First, they argue that the complaint should not be construed to assert a RICO claim.  Dkt. 16-1 at 11 n.3.  And, second, they argue that, if it is construed to assert such a claim, the claim should be dismissed on multiple grounds.  *Id.* at 11–20.  The Court agrees with the first of these contentions and, accordingly, does not reach the second.

Rule 8 requires a complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief" and "a demand for the relief sought."  Fed. R. Civ. P. 8(a).  The Rule thus ensures that the opposing party will receive "fair notice of what the . . . claim is and the grounds upon which it rests."  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (alteration in original) (quoting *Twombly*, 550 U.S. at 555).  "Where a complaint is insufficiently focused, it places an undue burden on the defendant to answer or move[,] and it invites unnecessary delay and confusion in the proceedings."  *Achagzai v. Broad. Bd. of Governors*, 109 F. Supp. 3d 67, 71 (D.D.C. 2015).

The complaint here refers to the civil RICO statute in a few sentences scattered throughout the pleading.  *See* Dkt. 14 at 1 (Am. Compl. ¶ 1) ("This case arises from the fraud by wire and mail pursuant to a civil RICO action . . . ."); *id.* at 3 (Am. Compl. ¶ 3) ("This court has jurisdiction [under] 18 U.S.C. § 1964[.]"); *id.* at 11–12 (Am. Compl. ¶ 42) (asserting that Defendants violated "federal and local laws, including the civil RICO statute"); *id.* at 17 (Am.

Compl. ¶ 70 n.7) (referring to the Defendants' last predicate act "[u]nder RICO").  It does not,

however, include RICO among the causes of action enumerated after the background allegations.

*See id.* at 19–23 (Am. Compl. ¶¶ 78–117).  And, although Defendants identified this omission in

their motion to dismiss, Dkt. 16-1 at 12 n.4, Jones failed to respond to that argument in his

opposition.  To the contrary, although the opposition makes occasional use of terms pertinent to

a RICO case, like "racketeering" and "enterprise," it essentially ignores the eight pages of

argument regarding RICO contained in Defendants' opening brief.

Under these circumstances, the Court is not "able to understand whether a [civil RICO]

claim is alleged and if so[,] what it is."  *Poblete v. Indymac Bank*, 657 F. Supp. 2d 86, 96

(D.D.C. 2009) (internal quotation marks omitted).  Absent far greater clarity on this issue, the

Court will proceed on the understanding that Jones does not intend to pursue a RICO claim.

**C.      Common Law Claims**

1.      *Supplemental Jurisdiction*

Before reaching the merits of Defendants' argument on Jones's common law claims, the

Court must first ensure that it has supplemental jurisdiction over those claims.  *See Arbaugh v. Y*

*& H Corp.*, 546 U.S. 500, 514 (2006) ("[C]ourts . . . have an independent obligation to determine

whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.");

*Attias v. Carefirst, Inc.*, 865 F.3d 620, 623 (D.C. Cir. 2017) (same).   That determination requires

a two-step inquiry.

First, the Court must determine whether Jones's state law claims are "so related to" his

FLSA claim—which undeniably falls within the Court's federal question jurisdiction—"that

[both sets of claims] form part of the same case or controversy under Article III."  28 U.S.C. §

1367(a).  "A federal claim and a state law claim form part of the same Article III case or

controversy," in turn, "if the two claims derive from a common nucleus of operative fact such that 'the relationship between [the federal] claim and the state claim permits the conclusion that the entire action before the [C]ourt comprises but one constitutional case." *Lindsay v. Gov't Emps. Ins. Co*., 448 F.3d 416, 423–24 (D.C. Cir. 2006) (citations and internal quotation marks omitted). The Court must, accordingly, consider whether Jones's state law and FLSA claims "derive from a common nucleus of operative fact" such that he "would ordinarily be expected to try them all in one judicial proceeding." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966); *see also City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997); *Wisey's # 1 LLC v. Nimellis Pizzeria LLC*, 952 F. Supp. 2d 184, 189 (D.D.C. 2013); *Taylor v. District of Columbia*, 626 F. Supp. 2d 25, 28 (D.D.C. 2009).

Applying this test, the Court concludes that the factual bases for Jones's FLSA and state law claims overlap in sufficient respects. Both sets of claims concern the same parties, the same employment relationship, and the same subject matter—Jones's wages. Both sets of claims, for example, will require resolution of how much Defendants agreed to pay Jones and how much they actually paid him. In addition, Defendants allegedly told Jones that because he was a manager, (1) he was not entitled to overtime wages (which bears on whether his FLSA claim is timely) and (2) he was not entitled to tips (which is relevant to the purported fraudulent reporting scheme). *See* Dkt. 14 at 8 (Am. Compl. ¶¶ 26–27) (FLSA allegations); *id.* at 10–11 (Am. Compl. ¶ 37) (fraud allegations). Moreover, although Jones's FLSA and state law claims seek to recover for different wrongs, they involve a common account of Defendants' allegedly deceptive behavior and manipulation of the payroll at the Sala Thai restaurants for their benefit, at the cost of Jones and other employees. *See White v. Cty. of Newberry*, 985 F.2d 168, 172 (4th Cir. 1993) ("The claims need only revolve around a central fact pattern."). These allegations are not mere

"background," but rather constitute "operative" facts that are central to Jones's claims.  *Cf. Wisey's # 1 LLC*, 952 F. Supp. 2d at 190.  The Court therefore concludes that Jones's FLSA and common law claims "derive from a common nucleus of operative fact."

Second, even though the Court has the "*power* to hear [Jones's] pendant claim[s]," that does not mean that "the court *must* hear [them]."  *Prakash v. Am. Univ.*, 727 F.2d 1174, 1183 (D.C. Cir. 1984).  Rather, supplemental jurisdiction is "a doctrine of discretion, not of plaintiff's right."  *Gibbs*, 383 U.S. at 726.  A district court may decline to exercise supplemental jurisdiction if (1) "the [state law] claim raises a novel or complex issue of [s]tate law;" (2) "the [state law] claim substantially predominates over the [federal] claim;" (3) "the district court has dismissed all claims over which it ha[d] original jurisdiction;" or (4) "exceptional circumstances [present] other compelling reasons for declining jurisdiction."  28 U.S.C. § 1367(c); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (instructing courts to consider "the values of judicial economy, convenience, fairness, and comity").

Considerations of judicial economy and convenience weigh in favor of considering Jones's state law claims along with his FLSA claim.  "[A]ny discovery conducted on the [FLSA claim] might aid a gathering of facts relevant to local-law issues."  *Prakash*, 727 F.2d at 1183.  In addition, both sets of claims "could comfortably be tried in a single proceeding to enable a just disposition of the entire controversy," *id.*, and Defendants would not be unfairly prejudiced by the Court's consideration of Jones's state law claims along with his FLSA claim.  Finally, the state law claims do not predominate, and the law governing those claims does not appear to raise "novel or complex" issues.  28 U.S.C. § 1367(c)(1).

2.      *Preemption*

Defendants contend that Jones's common law claims "are preempted by the FLSA because they arise out of [the] allegation that Defendants violated the FLSA."  Dkt. 16-1 at 5. Jones responds that the two sets of claims rest on related facts, but that they seek to vindicate distinct interests.  Jones's FLSA claim stems from the allegation that he was "not paid [overtime wages] because [he was] misclassifi[ed] . . . as an exempt employee," Dkt. 23 at 11, while his common law claims are based on Defendants' allegedly "false accounting and reporting of [tip] income," *id.*

Jones is correct.  Although involving overlapping facts, Jones's common law claims do not duplicate his FLSA claim because they seek to "remedy" different wrongs: the FLSA claim seeks to remedy the *underpayment* of Jones's wages, while the common law claims seek to remedy the *overreporting* of his wages.  Accordingly, Jones's common law claims do not tread on the "exclusive remedies" that Congress provided in FLSA.  *See Serrano v. Chicken-Out Inc.*, 209 F. Supp. 3d 179, 199 (D.D.C. 2016); *Ventura*, 738 F. Supp. 2d at 22.  If the Court were to conclude, for example, that Jones was an exempt employee who was not entitled to overtime compensation under the FLSA, Jones would still be able to pursue his claims that Defendants fraudulently inflated his earnings in reports filed with the IRS and state tax authorities.

The Court, accordingly, will deny Defendants' motion to dismiss the common law claims.

**D.      Statute of Limitations**

Finally, Defendants seek dismissal on the grounds that all of Jones's claims are barred by the applicable statutes of limitations.  Dkt. 16-1 at 20–23.  A statute of limitations provides an affirmative defense, Fed. R. Civ. P. 8(c)(1), and thus a complaint need not anticipate and address

a potentially applicable statute of limitations, *Connors v. Hallmark & Son Coal Co.*, 935 F.2d 336, 343 n.12 (D.C. Cir. 1991).  The D.C. Circuit has "repeatedly held," moreover, that "courts should [be] hesita[nt] to dismiss a complaint on statute of limitations grounds based solely on the face of the complaint." *Firestone v. Firestone*, 76 F.3d 1205, 1208–09 (D.C. Cir. 1996) (per curiam).  Rather, because "statute of limitations issues often depend on contested questions of fact," *id.* at 1209, district courts should grant motions to dismiss on statute of limitations grounds only where "the factual allegations in the complaint [themselves] clearly demonstrate all elements of the statute of limitations defense *and* . . . the plaintiff has no viable response to the defense," *United States ex rel. Landis v. Tailwind Sports Corp.*, 51 F. Supp. 3d 9, 38 (D.D.C. 2014); *see also Marzorati v. MedStar-Georgetown Med. Ctr., Inc.*, --- F. Supp. 3d ---, No. 16-2161, 2017 WL 3016753, at *2 (D.D.C. July 14, 2017).

Here, the Court concludes that it would be premature to dismiss Jones's claims as time barred.  Although it appears that the relevant statutes of limitations might have otherwise run, Jones argues that the statutes should be tolled due to, among other things, Defendants' affirmative misrepresentations and efforts to obscure their misconduct.  He alleges that Defendants told him that he was not entitled to overtime wages because he was a "manager," notwithstanding the fact that he was required to perform a host of non-managerial roles.  Dkt. 14 at 16–17 (Am. Compl. ¶¶ 66–69).  And he contends that Defendants repeatedly told him that the false reporting of his wages to the IRS and state tax authorities was simply a mistake, which they would clear up.  *Id.* at 17–18 (Am. Compl. ¶¶ 69–70).

These and other contentions arguably implicate the doctrines of equitable estoppel and equitable tolling.  Equitable tolling "allows a plaintiff to avoid the bar of the limitations period if despite all due diligence he is unable to obtain vital information bearing on the existence of his

20

claim," while equitable estoppel "prevents a defendant from asserting untimeliness where the *defendant* has taken active steps to prevent the plaintiff from litigating in time." *Currier v. Radio Free Europe/Radio Liberty, Inc.*, 159 F.3d 1363, 1367 (D.C. Cir. 1998).  To be sure, tolling is appropriate "only in extraordinary and carefully circumscribed instances," *Mondy v. Sec'y of the Army*, 845 F.2d 1051, 1057 (D.C. Cir. 1988), and thus it is far from clear that Jones will be able to prevail on any of these theories.  But the law imposes a high hurdle on a defendant who raises a statute of limitations defense on a motion to dismiss, and the Court is unable to conclude from the face of the complaint that tolling is unwarranted here.

## CONCLUSION

For the reasons explained above, Defendants' motion to dismiss, Dkt. 16, is hereby **GRANTED** in part and **DENIED** in part.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  September 20, 2017